IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CURTIS A. MITCHELL, an Individual as EXECUTOR OF THE ESTATE OF CELESTINE S. MITCHELL, Deceased,<br><br>Plaintiff,<br><br>v.<br><br>LUCENT TECHNOLOGIES INC. PENSION PLAN; ALCATEL-LUCENT USA INC., PLAN SPONSOR AND ADMINISTRATOR; and ALCATEL-LUCENT EMPLOYEE BENEFITS COMMITTEE n/k/a NOKIA, EMPLOYEE BENEFITS COMMITTEE,<br><br>Defendants. | Case No. 1:17-cv-08097<br><br>Judge Thomas M. Durkin |

**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Defendants, Lucent Technologies Inc. Pension Plan; Alcatel-Lucent USA Inc.[1], and Alcatel-Lucent Employee Benefits Committee n/k/a Nokia Employee Benefits Committee ("Defendants"), by and through their attorneys, hereby move for summary judgment. For the reasons set forth below, the Court should enter judgment for Defendants and award them all appropriate relief.

**I. INTRODUCTION**

The Court should enter judgment for Defendants, as Plaintiff Curtis Mitchell ("Plaintiff") cannot establish the Estate's entitlement to a lump-sum payment of benefits under the Lucent Technologies Inc. Pension Plan (the "Plan"), a plan governed by the Employee Retirement Income Security of 1974, as amended, 29 U.S.C. §§ 1001 *et. seq*.

---

[1] Effective on January 1, 2018, Alcatel-Lucent USA Inc. changed its name to Nokia of America Corporation.

48080093v.4

At issue is the entitlement of Plaintiff's deceased mother, Celestine Mitchell ("Mitchell"), to a lump-sum benefit offered under the Plan on a one-time basis. To be eligible for this lump-sum payment in lieu of continuing monthly pension benefits, Mitchell needed to elect the lump-sum option during a specific timeframe. Mitchell timely made this election. However, ***with the help of her son, the Plaintiff***, she then revoked that election as permitted by the Plan. One month later--and two months after the window to elect the lump-sum payment closed--Mitchell attempted to nullify the revocation and re-elect the lump-sum option. The Plan administrator correctly denied this request because the deadline to make the lump-sum election had expired.

The decision of the Plan administrator should be affirmed under the governing abuse of discretion standard because Plaintiff cannot show that the decision was "downright unreasonable." *James v. Gen. Motors Corp.*, 230 F.3d 315, 317 (7th Cir. 2000). Indeed, the decision was clearly correct under the clear terms of the Plan and should be upheld under any standard of review. Plaintiff's present challenge to that decision is nothing more than a hindsight attempt to recover a windfall on behalf of a deceased participant.

The Court should grant Defendants' motion and enter judgment in their favor.

II.     **SUMMARY OF RELEVANT FACTS**

    A.     **The Lucent Technologies Inc. Pension Plan**

The Plan is sponsored by the Nokia of America Corporation (f/k/a Alcatel-Lucent USA Inc.) and provides pension benefits to certain eligible employees. (SUMF ¶ 1.)[2] Generally, a participant receives benefits in the form of a monthly annuity and benefits cease the month in which the pensioner dies. (SUMF ¶¶ 2-3.)

---

[2] Defendants cite to their accompanying Rule 56.1 Statement of Undisputed Materials Facts as "SUMF ¶ __."

The Plan confers discretionary authority on the Employee Benefits Committee (the "Committee") or Pension Plan Administrator to "grant or deny claims for benefits under the Pension Plan with respect to Employees and authorize disbursements according to this Plan. Benefits under this Plan will be paid only if the Committee, or if applicable, the Pension Plan Administrator decides in its discretion that the applicant is entitled to them." (SUMF ¶¶ 4, 7; *see also* SUMF ¶¶ 5-6.) Further, the Plan vests the Committee with "the authority to determine conclusively for all parties any and all questions arising from the administration of the Plan" and provides that the Committee has:

> sole and complete discretionary authority and control to manage the operation and administration of the Plan, including, but not limited to, the determination of all questions relating to eligibility for participation and benefits, interpretation of all Plan provisions, determination of the amount and kind of benefits payable to any Participant, Lawful Spouse or beneficiary, and construction of disputed or doubtful terms.

(SUMF ¶ 8.)

### B. The Retiree Lump-Sum Window Amendment to the Plan

The Plan was amended June 29, 2015 to add the Retiree Lump-Sum Window ("RLSW"). (SUMF ¶ 9.) The RLSW provided a one-time opportunity for certain participants to convert the monthly annuity under the Plan to a lump-sum payment, calculated as the present value of a participant's remaining annuity payments for his or her life expectancy. (SUMF ¶ 10.) To elect the lump-sum payment, an eligible participant had to make the election within the Election Period, *i.e.*, "beginning at 12:01 a.m. Eastern time on July 20, 2015 and ***ending at 11:59 p.m. Eastern time on September 25, 2015***." (SUMF ¶ 11 (emphasis added).) The participant then had to submit an executed authorization form by October 16, 2015. (SUMF ¶ 12.)[3] Importantly, a

---

[3] The RLSW originally provided that the authorization form must also be submitted by 11:59 p.m. ET on September 25, 2015. (SUMF ¶ 12.) The Plan was amended on September 24, 2015 to extend this deadline to October 16, 2015. (*Id.*)

3

participant could revoke a lump-sum election at any time prior to November 1, 2015. (SUMF ¶ 13.) In the event of a revocation, the participant "shall continue to receive monthly pension payments in the form(s) in effect prior to the RLSW and his or her rights to a pension under Article 4 of the Plan . . . will be determined in accordance with the terms of the Plan determined without regard to" the RLSW. (*Id*.) An individual who revoked an RLSW election, could subsequently make a new RLSW election, *but only within the original Election Period ending September 25, 2015*. (*Id*.)

Participants were sent a Program Announcement describing the RLSW in June 2015. (SUMF ¶ 14.) Among other things, it warned participants that once the RLSW window closes on September 25, 2015, "this one-time opportunity will end." (SUMF ¶ 15.) It also instructed how to revoke an election:

> You can revoke your choices at any time before November 1, 2015. Before 5:00 p.m. ET on October 30, 2015, you can revoke your choices simply by calling the Alcatel-Lucent Retiree Lump-Sum Window Benefits Center at 1-866-617-7164 and stating that you revoke your choices. . . . *If you revoke your choices, your current monthly pension payments will continue.*

(SUMF ¶ 16 (emphasis added).) Finally, the announcement enclosed a Financial and Tax Education Guide "to help [participants] better understand the financial and tax aspects of the lump-sum payment opportunity." (SUMF ¶ 17.) It also notified participants that they could attend one of the complimentary Financial and Tax Education Group Sessions, that they could attend an individual Financial and Tax Education Session, and recommended that "you consult with your personal financial planner and/or tax advisor before making a decision about the Program." (*Id*.)

### C. Mitchell Elects the RLSW Lump-Sum Payment

Mitchell ceased working for Lucent Technologies or one of its predecessors on June 29, 2001 and began receiving monthly benefits on July 1, 2001. (SUMF ¶ 18.) She elected to receive

4

her Plan benefits as a "Single Life Annuity." (*Id*.) Under the terms of the Plan, a Single Life Annuity is "[a]n annuity that is the accrued benefit and is for the life of the Participant only." (*Id*.)

On June 27, 2015, AonHewitt as RLSW Administrator,[4] sent Mitchell a mailing entitled "Your Benefit Decision Kit: *Making Your Choices*," which informed Mitchell how to elect the lump-sum option. (SUMF ¶ 19.) That mailing instructed Mitchell to "consult with your personal financial or tax advisor" and to sign-up for a Financial and Tax Education group session. (SUMF ¶ 20.) It also warned: "If you do not provide necessary information or all the required signatures on the applicable form by September 25, 2015, you will not be eligible for the Program." (*Id*.)

On September 1, 2015, *Plaintiff* called the Alcatel-Lucent Retiree Lump-Sum Window Benefits Center ("Benefits Center") and asked to convert Mitchell's monthly benefit to a lump-sum payment under the RLSW. (SUMF ¶ 22.) Plaintiff said he and Mitchell had an appointment with a financial advisor to determine the type of account the payment should be rolled into. (*Id*.) On September 19, 2015, Mitchell (or an individual acting on her behalf) accessed the Your Benefits Resources website and elected to convert her monthly annuity to a lump sum under the RLSW. (SUMF ¶ 23.) The RLSW Administrator then sent Mitchell an authorization form (the "Authorization") to be executed and returned by September 25. (SUMF ¶ 24.)

On September 24, 2015, *Plaintiff* called the Benefits Center again "to make sure I have all the forms that I need to fax." (SUMF ¶ 25.) During that call, the representative explained to Plaintiff that the RLSW election could be revoked over the phone until October 30, 2015. (*Id*.) Mitchell's executed Authorization was faxed to the RLSW Administrator on September 25, 2015, and by executing the Authorization, Mitchell attested that "I understand I can revoke my

---

[4] The RLSW Administrator is "the third-party recordkeeper retained by the Pension Plan Administrator to perform ministerial functions with respect to the RLSW." (SUMF ¶ 19.)

choices completely and make no changes to my current monthly payments before November 1, 2015." (SUMF ¶ 26.) The RLSW Administrator sent confirmation to Mitchell on September 29, 2015, again informing Mitchell: "You can revoke your choices at any time before November 1, 2015. Before 5:00 p.m., ET, on October 30, 2015, you can revoke your choices by simply calling the Alcatel-Lucent Retiree Lump-Sum Window Benefits Center . . . and stating that you revoke your choices." (SUMF ¶ 27.)

### D. Plaintiff and Mitchell Revoke the RLSW Election

On October 21, 2015, *Plaintiff* called the Benefits Center to ask how to revoke Mitchell's RLSW election. (SUMF ¶ 28.) The representative explained that it could be done through a secured call to the Benefits Center asking for a revocation. (*Id*.)

On October 27, 2015, *Plaintiff* called again with Mitchell on the line. (SUMF ¶ 29.) Mitchell said that Plaintiff had permission to speak on her behalf. (*Id*.) Plaintiff asked the Benefits Center to revoke the lump-sum election, explaining that Mitchell "would just like to resume her payment." (*Id*.) The representative called Plaintiff back that day and confirmed that the lump-sum payment had been canceled. (SUMF ¶ 30.) The RLSW Administrator also sent a letter confirming the revocation on October 29, 2015. (SUMF ¶ 32.) Prior to receiving that letter, on October 30, *Plaintiff* and Mitchell again called the Benefits Center, asking for confirmation that Mitchell would continue receiving her monthly payment. (SUMF ¶ 31.)

### E. Plaintiff Belatedly Attempts to Re-Elect the Lump-Sum Option

On November 27, 2015, Plaintiff and Mitchell's cousin Linda Evans ("Evans") called the Benefits Center. (SUMF ¶ 33.) Evans said that Plaintiff held Power of Attorney for Mitchell, but that Plaintiff "has no knowledge at all of investments" and revoked the RLSW election not understanding "what impact that might have on [Mitchell's] financial stability while she lives." (*Id.*) The representative explained the Plan's claim process to Evans. (*Id.*) Evans said they would

6

be filing a claim "[n]ow that we've had the opportunity to talk with the attorney and licensed financial advisors of which [Plaintiff] did not have at his disposal at the time that he received the correspondence. . . ." (*Id.*)

### F. Mitchell's Claim for a Lump-Sum Payment Is Properly Denied

Mitchell sent a letter dated December 1, 2015 to the Pension Plan Administrator, claiming that her revocation was "uninformed" and the result of "limited access of thoroughly consulting with different financial investment counselors." (SUMF ¶ 34.) Mitchell also noted that she "was encouraged by peers and family into making the decision to elect monthly annuity payments." (*Id.*) Mitchell asked to be allowed to re-elect the lump-sum option. (*Id.*) Mitchell also enclosed a Power of Attorney granting Plaintiff authority over "any and all business, financial, legal and other matters" of Mitchell as of February 13, 2006. (SUMF ¶¶ 21, 35.)

By letter dated, May 9, 2016, Mitchell's claim was denied. (SUMF ¶ 36.) The denial letter correctly cited the RLSW's deadline for making a lump-sum election and correctly concluded that, "because you chose to revoke your lump sum election on October 27, 2015, which was after the September 25, 2015, Program deadline, you permanently revoked your election because you are not able to re-make another Effective Election by the September 25, 2015 deadline because that deadline date had already passed." (*Id.*)

Mitchell appealed the denial on July 7, 2016, arguing for the first time that the RLSW revocation was void "because she is suffering from a progressive neurological disorder . . . that affects her thinking and hinders her ability to make proper judgments and decisions." (SUMF ¶ 37.) Mitchell claimed that she was "not mentally capable of making a valid election within the short time allotted to her and she revoked said election as a result of undue influence exerted upon her by others." (*Id.*) The Committee denied Mitchell's appeal, correctly noting that:

7

> Mitchell's request to revoke her election on October 27, 2015 was a valid request and that, when Linda Evans and Curtis Mitchell called the RLSW Administrator on November 27, 2015, requesting another opportunity for Ms. Mitchell to participate in the Program, it was past the Pension Plan's deadline of September 25, 2015 to elect a new election under the Program.

(SUMF ¶ 40.) The Committee's decision was based on the Plan's terms, and consideration of the entire record of Mitchell's claim, including her appeals submissions, documents regarding her RLSW election and revocation, and the transcripts of the calls with the Benefits Center. (SUMF ¶¶ 38-39.)

Mitchell died on October 17, 2016. (SUMF ¶ 41.) Plaintiff filed this lawsuit as executor of Mitchell's estate on November 8, 2017. (*Id.*)

## III.   LEGAL STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once a movant meets its burden, the non-movant must provide specific facts demonstrating a genuine issue for trial. FED. R. CIV. P. 56(e); *Basith v. Cook Cnty.*, 241 F.3d 919, 926 (7th Cir. 2001). A genuine issue of material fact exists only where "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To show a dispute exists, a plaintiff "must supply evidence sufficient to allow a jury to render a verdict in his favor." *Basith*, 241 F.3d at 926.

## IV.   ARGUMENT

### A.   The Abuse of Discretion Standard Governs

An ERISA benefit denial is reviewed under the arbitrary and capricious standard if the plan documents give the plan administrator discretionary authority to determine benefit

8

eligibility or to construe plan terms. *Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 331 (7th Cir. 2000) (stating that deferential review applies if plan's language "indicates with the requisite [of] minimum clarity that a discretionary determination is envisaged"); *see also Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

Here, there is no question that the Plan vests the Committee with such discretionary authority. With respect to claims under the Plan, it provides the Pension Plan Administrator "shall grant or deny claims for benefits under the Pension Plan" and that "[b]enefits under this Plan will be paid only if the Committee, or if applicable, the Pension Plan Administrator decides in its discretion that the applicant is entitled to them." (SUMF ¶ 7.)

The Plan also reserves final decision-making authority for the Committee, providing that the Committee "shall have sole and complete discretionary authority and control to manage the operation and administration of the Plan, including, but not limited to, the determination of all questions relating to eligibility for participation and benefits, interpretation of all Plan provisions, [and] determination of the amount and kind of benefits payable." (SUMF ¶ 8.)

The Pension Plan Administrator exercised its discretionary authority in denying Mitchell's December 1, 2015 claim (SUMF ¶ 36.) The Committee also exercised its discretionary authority in denying Mitchell's July 17, 2016 appeal. (SUMF ¶¶ 37-40.) Accordingly, the deferential standard of review applies here.[5]

---

[5] Defendants recognize that the Seventh Circuit has found that an Illinois insurance regulation, 50 Ill. Admin. Code § 2001.3, prohibits the use of discretionary clauses in ERISA plan documents. *See Fontaine v. Metro. Life Ins. Co.*, 800 F.3d 883 (7th Cir. 2015). The regulation and *Fontaine* do not apply for two reasons. First, the Plan is a funded pension benefit plan. Accordingly, § 2001.3, which applies only to insurance policies, does not apply. Second, that regulation covers only insurance policies providing health and disability benefits. The benefits under the Plan are indisputably neither of these.

9

### B. Under the Governing Standard of Review, The Plan's Decision Must be Affirmed

A benefit determination under ERISA § 1132(a)(1)(B) will be found arbitrary and capricious only when "downright unreasonable." *James v. Gen. Motors Corp.*, 230 F.3d 315, 317 (7th Cir. 2000). A decision will not be overturned under this standard so long as (1) it is possible to offer a reasoned explanation based on the evidence, (2) the decision is based on a reasonable explanation of relevant plan documents, or (3) the claim administrator has based its decisions on a consideration of the relevant factors that encompass important aspects of the problem. *Militello v. Cent. States Se. & Sw. Areas Pension Fund*, 360 F.3d 681, 686 (7th Cir. 2004). It is not the Court's role to decide whether it would reach the same decision, but whether there is any rational support in the record for the decision. *Fischer v. Liberty Life Assur. Co. of Boston*, 576 F.3d 369, 376 (7th Cir. 2009). This is thus a "highly deferential" standard of review. *Jenkins v. Price Waterhouse Long Term Disability Plan*, 564 F.3d 856, 861 (7th Cir. 2009). Additionally, the Court's inquiry is limited to information submitted to the claims administrator. *See Perlman v. Swiss Bank Corp. Comprehensive Disability Prot. Plan*, 195 F.3d 975, 981-82 (7th Cir. 1999) ("[D]eferential review of an administrative decision means review on the administrative record."); *Trombetta v. Cragin Fed. Bank for Sav. Emp. Stock Ownership Plan*, 102 F.3d 1435, 1438 n.1 (7th Cir. 1996) ("The only relevant materials at the time the district court ruled on summary judgment were the materials that were before the [administrator] when it reached its decision.").

Moreover, an ERISA administrator is required to administer the plan in "in accordance with the documents and instruments governing" it; and the Court must likewise enforce the terms of those documents. 29 U.S.C. § 1104(a)(1)(D); *see also Kennedy v. Plan Adm'r fir DuPont Sav. & Inv. Plan*, 555 U.S. 285, 288 (2009). In *Kennedy*, the Supreme Court noted that "ERISA

10

provides no exemption from this duty [to act in accordance with the documents and instruments government the plan] when it comes time to pay benefits. 555 U.S. at 300. "On the contrary, § 1132(a)(1)(B) . . . reinforces the directive, with its provision that a participant or beneficiary may bring a cause of action 'to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.'" *Id.* (*quoting* 29 U.S.C. § 1132(a)(1)(B)); *see also Curtiss–Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995) (noting that ERISA's statutory scheme "is built around reliance on the face of written plan documents"). Mandating compliance with the terms of Plan documents is foundational to ERISA, as it allows employers "establish a uniform administrative scheme, [with] a set of standard procedures to guide processing of claims and disbursement of benefits." *Egelhoff v. Egelhoff*, 532 U.S. 141, 148 (2001) (citing *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 9 (1987)).

As required by ERISA, the Committee followed the clear terms of the Plan in denying Mitchell's claim. The Plan makes clear that a participant can revoke her RLSW election, and that the consequence of this revocation would be continued payment of the monthly annuity for the life of the participant. (SUMF ¶¶ 12, 18.) The Plan is also clear that a revoking participant "may subsequently make a new Effective Election under the RLSW" so long as the election is made prior to September 25, 2015. (SUMF ¶ 13.)

It is undisputed that Plaintiff and Mitchell, calling the Benefits Center together, revoked Mitchell's RLSW election on October 27, 2015. (SUMF ¶ 29.) Because the Election Period under the RLSW had already closed by that point, Mitchell could not make a new RLSW election. (SUMF ¶¶ 13, 36, 40.) Her later efforts to make an RLSW election were thus untimely. The Committee's decision was plainly correct under the clear Plan terms and Plaintiff cannot

11

show that it was downright unreasonable or lacks rational support in the record. Accordingly, the Court must grant Defendants' motion.

### C. Under Any Standard of Review, The Plan's Decision Must be Affirmed

To meet his burden of proof under a *de novo* standard of review, which should not apply, Plaintiff would still be obligated to demonstrate that the Committee's decision was wrong. Plaintiff cannot make this showing. He suggests in the Complaint that the decision was wrong by suggesting that Mitchell was mentally incapable of revoking the RLSW election on October 27, 2015. This argument is belied by the undisputed facts.

First, any claim that Mitchell's alleged incapacity impacted her benefit elections, relies on, at best, willful ignorance of the record. At every turn in the RLSW election process, Mitchell was aided by her son, the *Plaintiff* in this case. This included multiple calls to the Benefits Center regarding both the lump-sum election and the revocation. (SUMF ¶¶ 22, 25, 28, 29, 31.) Indeed, *Plaintiff and Mitchell* both called on October 27, 2015 to revoke her election. (SUMF ¶ 29.) Mitchell specifically said Plaintiff was authorized to speak on her behalf. (*Id.*) Both again called back on October 30, 2015 to confirm the revocation. (SUMF ¶ 31.)

Only after Evans became involved did anyone question the decision to revoke the lump-sum election. Tellingly, Evans never asserted that Mitchell lacked decision-making capacity. Rather, in attempting to negate the RLSW revocation, Evans noted that Plaintiff's knowledge of financial issues was not high. (SUMF ¶ 33.) Be that as it may, Mitchell chose Plaintiff, not her cousin, to exercise Power of Attorney over Mitchell's financial matters. (*Id.*; *see also* SUMF ¶ 35.) Plaintiff was thus authorized to revoke the lump-sum election on October 27, 2015, even if Mitchell--who was on the line with him--was incompetent at that point. While Mitchell's cousin may have taken issue with Mitchell's election decision, that does nothing to negate the binding effect of that decision under the Plan. Plaintiff's Power of Attorney moots any claimed impact of

12

Mitchell's alleged incapacity. *See, e.g.*, *Boyle v. Liberty Mutual Ins. Co.*, 2009 WL 2743514, at *8 (N.D. Ill. Aug. 26, 2009) (finding power of attorney effective to confer authority to submit ERISA claim for benefits).[6]

Second, this argument requires Plaintiff to thread an impossibly small needle. To succeed on this argument, he must show that Mitchell had the capacity to elect the lump-sum option when she executed the authorization form on *September 22, 2015*, but that she was mentally incapable of revoking that election on *October 27, 2018*--just over a month later. The scant medical evidence Mitchell submitted with her appeal simply does not support this drastic change over such a short period. (SUMF ¶ 38.)

In fact, Mitchell herself conceded that this argument is untenable in her appeal. There, Mitchell claimed that she "was not mentally capable of making a *valid election* within the short time allotted to her and she also revoked said election as a result of undue influence." (SUMF ¶ 37.) But if Mitchell's initial *election* was invalid, she would have been in the same situation that she ended up after revoking the RLSW election--*i.e.*, receiving monthly pension benefits under the Plan's normal distribution provisions. (SUMF ¶¶ 13, 18.) By Mitchell's own admission, she should never have been allowed to participate in the lump-sum program. The Court need not look to her mental capacity on October 27, 2015 to reach this conclusion.

Finally, Plaintiff's argument fails because the record does not substantiate any claim that Mitchell's revocation in October 2015 was due to any alleged incapacity. In her December 1,

---

[6] Indeed, Plaintiff's power of attorney over Mitchell's financial matters--learned by the Pension Plan Administrator only after Mitchell's December 1, 2015 claim--calls into question whether Mitchell's initial election of the lump-sum option was effective in the first place. Based on Plaintiff's power of attorney, it is unclear whether Mitchell's submission of the executed authorization form should have any legal effect if Mitchell was incapacitated when the lump-sum option was elected. Plaintiff may have been required to execute the authorization and provide the power of attorney authorizing him to do so. Had Mitchell's initial lump-sum election been ineffectual, she would have ended up in the same situation as she ultimately did here. In both cases, Mitchell would be entitled to her original monthly pension benefit. (SUMF ¶¶ 13, 18.) Under the Plan, a failure to take any action with respect to the RLSW resulted in a continuation of the participant's monthly payments. (SUMF ¶ 13.)

13

2015 claim letter, Mitchell makes no reference to any incapacity. Rather, she claimed that the revocation of the lump-sum election was an "uninformed decision," made "without careful consideration," and with "encourage[ment] by peers and family into making the decision to elect monthly annuity payments." (SUMF ¶ 34.) Mitchell's cousin made the same point when she called the Benefits Center on November 27. There Evans blamed *Plaintiff* for making the revocation, stating that he has "has no knowledge at all of investments" and did not understand "what impact that might have on [Mitchell's] financial stability while she lives." (SUMF ¶ 33.) Evans informed the representative of their intent to file a claim "[n]ow that we've had the opportunity to talk with the attorney and licensed financial advisors of which Mr. Mitchell did not have at his disposal at the time that he received the correspondence." (*Id.*)

Plaintiff's and Mitchell's apparent lack of financial knowledge and failure to consult a financial advisor, not a lack of mental acuity by Mitchell, led to the revocation of the RLSW lump-sum election and the belated attempt to re-elect that option.[7] Neither ERISA nor the Plan countenances a deviation from the clear rules of the Plan under these circumstances. Plaintiff cannot recoup benefits not provided for by the Plan, particularly given that: (a) Plaintiff and Mitchell were repeatedly advised in both written and oral communications beginning with the Program Announcement that was sent in June of 2015 to seek financial advice before making a decision, and (b) that Mitchell, consistent with her election, continued to receive a monthly annuity for the duration of her life. (SUMF ¶ 35, 41.)

---

[7] Although a lack of financial knowledge or advice on Mitchell's or Plaintiff's part is not a sufficient excuse for belatedly revoking an RLSW election under the Plan, that contention is also contradicted by the record. Plaintiff, with Mitchell present on the call, told the Benefits Center, "we have an appointment set up to talk with the financial advisors as far as which type of plan she should roll it over in." (SUMF ¶ 22.) Indeed, the Benefits Center responded that it could not complete the election without an account number in which to roll over the funds. (*Id.*) At a minimum then, Mitchell or Plaintiff needed to speak to a financial advisor to set up the rollover account to initiate the election in the first instance.

14

## V. CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion, enter judgment in their favor, and award them any appropriate relief under the circumstances.

**DATED: September 4, 2018**                Respectfully submitted,

LUCENT TECHNOLOGIES INC. PENSION
PLAN; ALCATEL-LUCENT USA INC.; AND
ALCATEL-LUCENT EMPLOYEE BENEFITS
COMMITTEE N/K/A NOKIA EMPLOYEE
BENEFITS COMMITTEE


By: */s/ Christopher M. Busey*
                One of Their Attorneys

Samuel M. Schwartz-Fenwick
Christopher M. Busey
SEYFARTH SHAW LLP
233 S. Wacker Drive, Suite 8000
Chicago, Illinois 60606
Telephone: (312) 460-5000
Facsimile: (312) 460-7000
E-mail: sschwartz-fenwick@seyfarth.com
           cbusey@seyfarth.com

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I certify that on September 4, 2018, I served a copy of the foregoing DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT via the Court's CM/ECF system on the following counsel of record:

Joseph P. Berglund
Berglund & Mastny PC
1010 Jorie Boulevard, #370
Oakbrook, IL 60523
(630) 990-0234
Email: berglundniew@aol.com

                                       */s/ Christopher M. Busey*
                                       One of the Attorneys for Defendants

48080093v.4