# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| CURTIS MITCHELL, an Individual as EXECUTOR OF THE ESTATE OF CELESTINE S. MITCHELL, Deceased, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 17-cv-8097 |
| LUCENT TECHNOLOGIES INC. PENSION PLAN; ALCATEL-LUCENT USA INC., Plan Sponsor and Administrator; and ALCATEL-LUCENT EMPLOYEE BENEFITS COMMITTEE n/k/a NOKIA EMPLOYEE BENEFITS COMMITTEE, | ) ) ) ) ) ) ) ) | Judge Thomas M. Durkin |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Curtis Mitchell ("Plaintiff") brought this action to recover benefits due to his deceased mother, Celestine Mitchell ("Mitchell"), under an employee pension benefits plan provided by Lucent Technologies Inc. Pension Plan (the "Plan"). Both parties have moved for summary judgment. Because the parties' motions concern the same arguments, the Court will discuss each argument, rather than addressing each motion individually. For the following reasons, Defendant's motion is granted, and Plaintiff's motion is denied.

## Background

The following facts are undisputed. The Plan is sponsored by the Nokia of America Corporation (formerly known as Alcatel-Lucent USA Inc.) and provides pension benefits to certain eligible employees. R. 36 ¶ 1. Generally, a participant

receives benefits in the form of a monthly annuity and benefits cease the month in which the pensioner dies. *Id.* ¶¶ 2–3.

The Plan confers discretionary authority on the Employee Benefits Committee (the "Committee") or Pension Plan Administrator to "grant or deny claims for benefits under the Pension Plan with respect to Employees and authorize disbursements according to this Plan. Benefits under this Plan will be paid only if the Committee, or if applicable, the Pension Plan Administrator decides in its discretion that the applicant is entitled to them." *Id.* ¶¶ 4–7. Further, the Plan vests the Committee with "the authority to determine conclusively for all parties any and all questions arising from the administration of the Plan" and provides that the Committee has:

> sole and complete discretionary authority and control to manage the operation and administration of the Plan, including, but not limited to, the determination of all questions relating to eligibility for participation and benefits, interpretation of all Plan provisions, determination of the amount and kind of benefits payable to any Participant, Lawful Spouse or beneficiary, and construction of disputed or doubtful terms.

*Id.* ¶ 8.

The Plan was amended on June 29, 2015 to add the Retiree Lump-Sum Window ("RLSW"). *Id.* ¶ 9. The RLSW provided a one-time opportunity for certain participants to convert the monthly annuity under the Plan to a lump-sum payment. *Id.* ¶ 10. To elect the lump-sum payment, an eligible participant had to make the election within the Election Period, *i.e.*, "beginning at 12:01 a.m. Eastern time on July 20, 2015 and ending at 11:59 p.m. Eastern time on September 25, 2015." *Id.* ¶ 11. The participant then had to submit an executed authorization form by October 16, 2015. *Id.* ¶ 12. Importantly, a participant could revoke a lump-sum election at any time

2

before November 1, 2015. *Id*. ¶ 13. In the event of a revocation, the participant "shall continue to receive monthly pension payments in the form(s) in effect prior to the RLSW and his or her rights to a pension under Article 4 of the Plan . . . will be determined in accordance with the terms of the Plan determined without regard to" the RLSW. *Id*. An individual who revoked an RLSW election could subsequently make a new RLSW election, but only within the original Election Period ending September 25, 2015. *Id*.

Participants were sent a Program Announcement describing the RLSW in June 2015. *Id*. ¶ 14. Among other things, it warned participants that once the RLSW window closes on September 25, 2015, "this one-time opportunity will end." *Id*. ¶ 15. It also instructed how to revoke an election:

> You can revoke your choices at any time before November 1, 2015. Before 5:00 p.m. ET on October 30, 2015, you can revoke your choices simply by calling the Alcatel-Lucent Retiree Lump-Sum Window Benefits Center at 1-866-617-7164 and stating that you revoke your choices. . . . If you revoke your choices, your current monthly pension payments will continue.

*Id*.¶ 16. The announcement enclosed a Financial and Tax Education Guide "to help [participants] better understand the financial and tax aspects of the lump-sum payment opportunity." *Id*. ¶ 17. It also notified participants that they could attend one of the complimentary Financial and Tax Education Group Sessions, that they could attend an individual Financial and Tax Education Session, and recommended that they "consult with [their] personal financial planner and/or tax advisor before making a decision about the Program." *Id*.

### A. Mitchell Elects a Lump Sum Payment

3

Mitchell ceased working for Lucent Technologies or one of its predecessors on June 29, 2001 and began receiving monthly benefits on July 1, 2001. *Id*. ¶ 18. She elected to receive her Plan benefits as a "Single Life Annuity." *Id*. Under the terms of the Plan, a Single Life Annuity is "[a]n annuity that is the accrued benefit and is for the life of the Participant only." *Id*.

On June 27, 2015, AonHewitt as RLSW Administrator, sent Mitchell a mailing entitled "Your Benefit Decision Kit: Making Your Choices," which informed Mitchell how to elect the lump-sum option. *Id*. ¶ 19. That mailing instructed Mitchell to "consult with [her] personal financial or tax advisor" and to sign-up for a Financial and Tax Education group session. *Id*. ¶ 20. It also warned: "If you do not provide necessary information or all the required signatures on the applicable form by September 25, 2015, you will not be eligible for the Program." *Id*.

On September 1, 2015, Plaintiff, Mitchell's son, called the Alcatel-Lucent Retiree Lump-Sum Window Benefits Center ("Benefits Center") and asked to convert Mitchell's monthly benefit to a lump sum payment under the RLSW. *Id*. ¶ 22. Plaintiff had held a power of attorney over "any and all" of Mitchell's "business, financial, legal and other matters" since 2006. *Id*. ¶ 21. Plaintiff said he and Mitchell had an appointment with a financial advisor to determine the type of account the payment should be rolled into. *Id*. ¶ 22. On September 19, 2015, Mitchell (or an individual acting on her behalf) accessed the Your Benefits Resources website and elected to convert her monthly annuity to a lump sum under the RLSW. *Id*. ¶ 23. The RLSW Administrator then sent Mitchell an authorization form (the "Authorization") to be

4

executed and returned by September 25. *Id.* ¶ 24.

On September 24, 2015, Plaintiff called the Benefits Center again "to make sure I have all the forms that I need to fax." *Id.* ¶ 25. During that call, the representative explained to Plaintiff that the RLSW election could be revoked over the phone until October 30, 2015. *Id.* Mitchell's executed Authorization was faxed to the RLSW Administrator on September 25, 2015. *Id.* ¶ 26. By executing the Authorization, Mitchell attested that "I understand I can revoke my choices completely and make no changes to my current monthly payments before November 1, 2015." *Id.* The RLSW Administrator sent confirmation to Mitchell on September 29, 2015, again informing her: "You can revoke your choices at any time before November 1, 2015. Before 5:00 p.m., ET, on October 30, 2015, you can revoke your choices by simply calling the Alcatel-Lucent Retiree Lump-Sum Window Benefits Center . . . and stating that you revoke your choices." *Id.* ¶ 27.

**B. Mitchell Revokes the Lump Sum Payment Election**

On October 21, 2015, Plaintiff called the Benefits Center to ask how to revoke Mitchell's RLSW election. *Id.* ¶ 28. The representative explained that it could be done through a secured call to the Benefits Center asking for a revocation. *Id.*

On October 27, 2015, Plaintiff called again with Mitchell on the line. *Id.* ¶ 29. Mitchell said that Plaintiff had permission to speak on her behalf. *Id.* Plaintiff asked the Benefits Center to revoke the lump-sum election, explaining that Mitchell "would just like to resume her payment." *Id.* The representative called Plaintiff back that day and confirmed that the lump-sum payment had been canceled. *Id.* ¶ 30. The

5

RLSW Administrator also sent a letter confirming the revocation on October 29, 2015. *Id*. ¶ 32. Prior to receiving that letter, on October 30, Plaintiff and Mitchell again called the Benefits Center, asking for confirmation that Mitchell would continue receiving her monthly payment. *Id*. ¶ 31.

**C. Mitchell Attempts to Revoke the Revocation**

On November 27, 2015, Plaintiff and Mitchell's cousin Linda Evans called the Benefits Center. *Id*. ¶ 33. Evans said that Plaintiff held Power of Attorney for Mitchell, but that Plaintiff "has no knowledge at all of investments" and revoked the RLSW election not understanding "what impact that might have on [Mitchell's] financial stability while she lives." *Id*. The representative explained the Plan's claim process to Evans. *Id*. Evans said they would be filing a claim "[n]ow that we've had the opportunity to talk with the attorney and licensed financial advisors of which [Plaintiff] did not have at his disposal at the time that he received the correspondence." *Id*.

**D. Mitchell Files a Claim with the Administrator**

Mitchell sent a letter dated December 1, 2015 to the Pension Plan Administrator, claiming that her revocation was "uninformed" and the result of "limited access of thoroughly consulting with different financial investment counselors." *Id*. ¶ 34. Mitchell also noted that she "was encouraged by peers and family into making the decision to elect monthly annuity payments." *Id*. Mitchell asked to be allowed to re-elect the lump-sum option. *Id*. Mitchell also enclosed a Power of Attorney granting Plaintiff authority over "any and all business, financial,

6

legal and other matters" of Mitchell as of February 13, 2006. *Id.* ¶¶ 21, 35.

Mitchell's claim was denied on May 9, 2016. *Id.* ¶ 36. The denial letter cited the RLSW's deadline for making a lump-sum election and concluded that, "because you chose to revoke your lump sum election on October 27, 2015, which was after the September 25, 2015 Program deadline, you permanently revoked your election because you are not able to re-make another Effective Election by the September 25, 2015 deadline because that deadline date had already passed." *Id.*

### E. Mitchell Appeals the Administrator's Decision

Mitchell appealed the denial on July 7, 2016, arguing for the first time that the RLSW revocation was void "because she is suffering from a progressive neurological disorder . . . that affects her thinking and hinders her ability to make proper judgments and decisions." *Id.* ¶ 37. Mitchell claimed that she was "not mentally capable of making a valid election within the short time allotted to her and she revoked said election as a result of undue influence exerted upon her by others." *Id.* The Committee denied Mitchell's appeal, explaining that:

> Mitchell's request to revoke her election on October 27, 2015 was a valid request and that, when Linda Evans and Curtis Mitchell called the RLSW Administrator on November 27, 2015, requesting another opportunity for Ms. Mitchell to participate in the Program, it was past the Pension Plan's deadline of September 25, 2015 to elect a new election under the Program.

*Id.* ¶ 40.

Mitchell died on October 17, 2016. *Id.* ¶ 41. Mitchell continued to receive her monthly pension payments until her death. R. 34 ¶ 52. Plaintiff filed this lawsuit as executor of Mitchell's estate on November 8, 2017.

7

**Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The Court considers the entire evidentiary record and must view all of the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018). To defeat summary judgment, a nonmovant must produce more than a "mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Johnson v. Advocate Health and Hosps. Corp.*, 892 F.3d 887, 894, 896 (7th Cir. 2018). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**Discussion**

**I.   Abuse of Discretion Standard**

The parties first dispute what standard governs the review of the Committee's decision. In general, when a plan grants discretion to its administrator, courts review ERISA benefits denial under the arbitrary-and-capricious standard. *Dragus v. Reliance Standard Life Ins. Co.*, 882 F.3d 667, 672 (7th Cir. 2018); *Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 331 (7th Cir. 2000) (stating that deferential review applies even if plan's language only "indicates with the requisite [of] minimum clarity that a discretionary determination is envisaged"); *see also Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

8

Here, there is no question that the Plan vests the Administrator and Committee with such discretionary authority. With respect to claims under the Plan, it provides the Pension Plan Administrator "shall grant or deny claims for benefits under the Pension Plan" and that "[b]enefits under this Plan will be paid only if the Committee, or if applicable, the Pension Plan Administrator decides in its discretion that the applicant is entitled to them." R. 36 ¶ 7.

The Plan also reserves final decision-making authority for the Committee, providing that the Committee "shall have sole and complete discretionary authority and control to manage the operation and administration of the Plan, including, but not limited to, the determination of all questions relating to eligibility for participation and benefits, interpretation of all Plan provisions, [and] determination of the amount and kind of benefits payable." *Id.* ¶ 8.

Accordingly, the Administrator and Committee exercised their discretionary authority in denying Mitchell's December 1, 2015 claim and July 17, 2016 appeal. The deferential standard of review applies here.

Plaintiff argues instead for a *de novo* standard of review. He does not dispute that the Plan vests the Committee with discretionary authority to decide claims. *See* R. 35 at 2 (admitting defendants have discretionary authority in administering the Plan). Rather, he argues the Plan's broad grant of discretion does not encompass the situation here because "Defendants do not have discretion to determine [Mitchell's] mental capacity." R. 28-3 at 10; R. 35 at 2. Plaintiff does not cite any relevant support for his argument. The case he does cite, *Sladek v. Bell Sys. Mgmt. Pension Plan*, 880

9

F.2d 972 (1989), held that a participant's spouse had statutory standing under ERISA to bring suit. *Id.* at 979–80. But the court there did not, as Plaintiff suggests, determine a participant's mental capacity or hold that such a determination should be made by the Court de novo. In any event, as discussed below, Mitchell's mental capacity or lack thereof does not help Plaintiff's case.

## II. The Decision was not Arbitrary or Capricious

Under the arbitrary-and-capricious standard applicable here, an administrator's decision passes muster as "long as (1) it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, (2) the decision is based on a reasonable explanation of relevant plan documents, or (3) the administrator has based its decision on a consideration of the relevant factors that encompass the important aspects of the problem." *Dragus,* 882 F.3d at 672 (quoting *Cerentano v. UMWA Health & Ret. Funds*, 735 F.3d 976, 981 (7th Cir. 2013)). In fewer words, "the reviewing court must ensure only that a plan administrator's decision has rational support in the record." *Geiger v. Aetna Life Ins. Co.*, 845 F.3d 357, 362 (7th Cir. 2017) (quoting *Edwards v. Briggs & Stratton Ret. Plan*, 639 F.3d 355, 360 (7th Cir. 2011)). While an administrator's decision must have rational support, it "need not explain the reasoning behind the reasons, . . . that is, the interpretive process that generated the reason for the denial." *Herman v. Cent. States, Se. & Sw. Areas Pension Fund*, 423 F.3d 684, 693 (7th Cir. 2005).

An ERISA administrator is required to administer the plan "in accordance with the documents and instruments governing" it; and the Court must likewise enforce

the terms of those documents. 29 U.S.C. § 1104(a)(1)(D); *see also Kennedy v. Plan Adm'r fir DuPont Sav. & Inv. Plan*, 555 U.S. 285, 288 (2009). Mandating compliance with the terms of Plan documents is foundational to ERISA, as it allows employers to "establish a uniform administrative scheme, which provides a set of standard procedures to guide processing of claims and disbursement of benefits." *Egelhoff v. Egelhoff*, 532 U.S. 141, 148 (2001) (citing *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 9 (1987)).

Here, the Committee's decision to deny Mitchell's claim was not arbitrary or capricious. The Plan states that a participant can revoke her RLSW election, and that the consequence of this revocation would be continued payment of the monthly annuity for the life of the participant. R. 36 ¶¶ 12, 18. The Plan is also clear that a revoking participant "may subsequently make a new Effective Election under the RLSW" so long as the election is made prior to September 25, 2015. *Id*. ¶ 13.

It is undisputed that Plaintiff and Mitchell, calling the Benefits Center together, revoked Mitchell's RLSW election on October 27, 2015. *Id*. ¶ 29. Because the Election Period under the RLSW had already closed by that point, Mitchell could not make a new RLSW election. *Id*. ¶¶ 13, 36, 40. Her later efforts to make an RLSW election were thus untimely. It is simply not arbitrary and capricious to follow the rules, which in this case were straight-forward and unambiguous.

### III. Mitchell Received a Full and Fair Review of her Claim and Appeal

To avoid this result, Plaintiff argues that Mitchell was not given a full and fair review in violation of ERISA. Plan administrators must

1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133. Plaintiff argues the Committee did not meet these requirements because it failed to consider evidence of Mitchell's alleged mental incapacity to void her revocation.[1]

Plaintiff's argument regarding Mitchell's alleged mental incapacity fails at the outset—Plaintiff held power of attorney at all relevant times over Mitchell's financial decisions. R. 36 ¶ 21. *Plaintiff* called the Benefits Center with Mitchell on the line *twice* to confirm that Mitchell's election had been revoked prior to the deadline. *Id.* ¶¶ 24, 56. Mitchell explicitly said that Plaintiff had permission to speak on her behalf in revoking the election. *Id.* ¶ 29. Because Plaintiff held power of attorney for Mitchell, even if Mitchell was incompetent, Plaintiff legally revoked Mitchell's

---

[1] Plaintiff also argued that Defendants violated the terms of the Plan by not informing her that the deadline to submit her election form was extended to October 16, 2015. *See* R. 42 at 14. This argument fails for at least two reasons. First, Plaintiff improperly raises this issue for the first time on summary judgment. Plaintiff did not raise the issue in his complaint or before the Committee during either round of review. Presenting it now and asking the Court to enter judgment against Defendants on this issue is inappropriate. *See Chessie Logistics Co. v. Krinos Holdings, Inc.*, 867 F.3d 852, 860 (7th Cir. 2017) (affirming district court holding that theory of liability raised for first time on summary judgment was forfeited). Second, even if Mitchell had until October 16, 2015 to submit her election (which is not supported by the record), the result does not change—Mitchell revoked her lump sum election on October 27, 2015. At that point, it was too late to change her election.

election on October 27, 2015. Plaintiff does not dispute these facts.[2]

Instead, Plaintiff takes issue with the level of detail included in the Committee's report because it did not explicitly articulate these reasons (though it did mention that Mitchell and Plaintiff made the revocation by phone together, undermining Plaintiff's argument). But there was no need to—the Committee provided adequate reasons for denying Mitchell's claim. The Committee makes clear that Mitchell revoked her RLSW election and did not (and could not) timely elect a new RLSW election. R. 27-28 at 1–3. That is in line with the Plan's clear requirements. The Committee did not need to address Mitchell's mental capacity or Plaintiff's power of attorney. *See Estate of Jones v. Children's Hosp. & Health Sys. Inc. Pension Plan*, 892 F.3d 919, 923 (7th Cir. 2018) ("While an administrator's decision must have rational support, it need not explain the reasoning behind the reasons, that is, the interpretive process that generated the reason for the denial."). Regardless, "[w]hen challenged in court, the plan administrator can defend his interpretation with any arguments that bear upon its rationality." *Gallo v. Amoco Corp.*, 102 F.3d 918, 923 (7th Cir. 1996). The administrator "cannot augment the administrative records . . . , but he is not limited to what he told the applicant." *Id*. The decision will only be undermined if the justification offered in court "is

---

[2] Plaintiff argues that the Court should not consider various documents that support this conclusion because the Committee did not provide them to Mitchell during the appeal. Plaintiff had the opportunity to request all documents that the Committee considered on appeal. R. 27-28 at 2. There is no indication in the record that he did. Moreover, Plaintiff offers no evidence to suggest the Committee improperly considered this evidence.

13

inconsistent with the reason he gave the applicant." *Id.* Because the denial of lump-sum benefits is consistent with the rationale provided, Plaintiff's argument fails.

In any event, the documents submitted indicated the Committee *did* consider Mitchell's medical records. Specifically, the Committee's meeting minutes regarding Plaintiff's appeal note Mitchell's alleged mental incapacity. *See* R. 27-12 at 6–7. Further, the final denial letter sent by the Committee states that "[t]he Committee based its decision on a review of the facts and circumstances of this case including the information provided by you." R. 27-28. These statements indicate the Committee reviewed the medical records during Mitchell's appeal. Regardless, the evidence submitted in Mitchell's appeal does not help her case. The evidence, which was not included in the original claim, included two medical records. The first was a two-sentence letter from Dr. Sonika Ananda dated July 6, 2016 stating that Mitchell had been diagnosed with "progressive supranucleaur palsy" that "has made it difficult for patient to make proper judgments and decisions." R. 27-16. The second was a letter from Dr. Cath Della Mora dated June 10, 2012, stating that Mitchell suffered from dementia and should not live alone because of her cognitive deficits. R. 27-16. This evidence suggests Mitchell has lacked the mental capacity to make her own decisions *since at least 2012*. Plaintiff's argument that her mental capacity prevented her from revoking her lump sum decision in October 2015 therefore must also apply to her July 2015 decision to elect the lump sum payment, because she was incapacitated during that election. In that case, Mitchell would have continued to receive monthly payments as she did, and the result would have been the same. This analysis is beside

14

the point in any event, as, again, Plaintiff had power of attorney to make the decision.[3]

At the end of the day, Mitchell continued to receive her monthly pension payments until the end of her life, as contemplated by the Plan. Plaintiff may be unhappy with the Committee's decision to deny the lump sum payment, but that does not make the decision arbitrary or capricious.

## CONCLUSION

For these reasons, the Court grants Defendants' Motion for Summary Judgment, R. 25, and denies Plaintiff's Motion for Summary Judgment, R. 28.

ENTERED:

Dated: March 7, 2019

*Thomas M Durkin*
‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑
Honorable Thomas M. Durkin
United States District Judge

---

[3] For these reasons, even if the Court were to consider Plaintiff's arguments *de novo*, it would reach the same result. Under the *de novo* review standard, the court has the discretion to "limit the evidence to the record before the plan administrator, or . . . [to] permit the introduction of additional evidence necessary to enable it to make an informed and independent judgment." *Estate of Blanco v. Prudential Ins. Co. of Am.*, 606 F.3d 399, 402 (7th Cir. 2010). The Court will rely on the evidence before the Administrator and sees no need for additional evidence (nor has Plaintiff indicated other evidence is necessary). Here, the Plan language was clear. Mitchell failed to re-elect the lump-sum payment by the date allowed by the Plan. Her mental incapacity does not change this result, because she was either incapacitated in the first place to make the lump-sum election, or Plaintiff using his power of attorney made the decision to both elect and revoke the election. In either scenario, the result is the same. The Court also notes that allowing Mitchell an extended period of time to make a lump-sum election or allowing Plaintiff to elect a lump-sum payment after the fact would create great uncertainty for pension plan administrators, allow other individuals to change their minds and elect a lump-sum payment after the plan has accounted for all such timely elections, and would eventually hurt all pensioners. The Court doubts the parties intended such a result.